HANNAH M. WADE, *Appellant,* v. JOHN WADE, *Appellee.*

Division A.

Opinion Filed May 10, 1927.

1. Except where the defendant has been guilty of adultery in this State, the prerequisite two years residence in this State of the complainant in a suit for divorce, as prescribed by Sec. 3189, Revised General Statutes, 1920, is jurisdictional, and must be both alleged in the bill and established by the proofs, otherwise our courts have no authority to grant a decree of divorce.

2. The State being a party in interest in all divorce suits, and the public welfare and morals being involved, admissions of the parties therein, even by way of decree *pro confesso,* amount to but little. Proof of the allegations of the bill must be made.

3. The requirement of Sec. 3189, Revised General Statutes, 1920, that the complainant in a divorce suit must have "resided." two years in the State before bringing suit, refers to a "legal residence" of the complainant, that is to say, the place of domicile or permanent abode of such person, as distinguished from a temporary residence.

4. As used in Sec. 3189, Revised General Statutes, 1920, relating to the prerequisite two years residence in this State of a complainant in a suit for divorce, the word "reside" has reference to the complainant's legal residence, which means the place which an individual has made the chief seat of his household affairs or home interests, from which, without some special mission, he has no intention of departing; from which when he has departed, he is considered to be away from home; and to which, when he has returned, he is considered to have returned home.

5. There is a recognized distinction between a residence for commercial purposes and such a residence as is necessary to support the jurisdiction of a court to adjudicate upon the duties and obligation growing out of the marital status.

6. A legal residence or domicile in this State may be required by one who, coming from another state or country, actually lives in this State, with the intention of permanently remaining here. In such a case a domicile by choice is established. Legal residence consists of fact and intention. Both must concur.

7. The mere intention to acquire a new domicile, unaccompanied by an actual removal, avails nothing; neither does the fact of removal avail without the intention.

8. Evidence examined and found to be insufficient to meet the burden upon the complainant (in a suit for divorce) of proving the establishment and retention for two years of his *bona fide* legal residence in this State prior to the filing of the bill of complaint.

9. If the complainant in a suit for divorce "is or has become a *bona fide* resident of the State and intends to remain per-

manently a citizen of the State, mere absence with the intention of returning will not divest the courts of Florida of jurisdiction over such person or of the subject matter" in a suit for divorce.

An Appeal from the Circuit Court of Dade County; A. J. Roose, Judge.

Reversed.

*G. A. Worley & Son,* of Miami, for Appellant.

*Thompson, Barnes, Thompson & Youmans,* and *Robineau & Yonge,* all of Miami, for Appellee.

STRUM, J.—This is a suit for divorce, the husband being complainant below. From a decree granting the divorce as prayed, the defendant wife appealed.

The grounds upon which the divorce was sought are (1) extreme cruelty by the defendant wife to the complainant husband; and (2) habitual indulgence by the defendant in violent and ungovernable temper.

Among other things, the defendant below, appellant here, contends that the proof does not establsh the prerequisite two years residence in this State on the part of the complainant preceding the institution of this suit.

Except where the defendant has been guilty of adultery in this State, the prerequisite two years residence in this State of the complainant in a suit for divorce, as prescribed by Sec. 3189, Revised General Statutes, 1920, is jurisdictional, and must be both alleged in the bill and established by the proofs, otherwise our courts have no authority to grant a decree of divorce. Beekman v. Beekman, 43 South. Rep. 923; Kumrine v. Kumrine (Fla.), 106 South. Rep. 131. Such residence being jurisdictional, an admission thereof by the parties in their pleadings is ineffectual as a

substitute for proof. The requisite residence must be alleged in the bill and established by proof. This is not an instance in which facts going to the jurisdiction may be effectually admitted by the parties. Phelan v. Phelan, 12 Fla. 449; Underwood v. Underwood, 12 Fla. 434; Gredder v. Gredder, 36 Fla. 372, 18 South. Rep. 762; Prall v. Prall, 58 Fla. 496, 50 South. Rep. 867.

The State being a party in interest in all divorce suits, and the public welfare and morals being involved, admissions of the parties therein, even by way of decree *pro confesso,* amount to but little. Proof of the allegations of the bill must be made. Hancock v. Hancock, 55 Fla. 680, 45 South. Rep. 1020; 15 L. R. A. (N. S.) 670. Even if the defendant fails to appear, the courts are nevertheless bound to proceed with the same formality as if such defendant was present and maintaining the keenest opposition. State *ex rel.* Dixon v. Wolfe, 63 Fla. 290, 58 South. Rep. 841; Spencer v. Spencer, 61 Fla. 777, 55 South. Rep. 71.

The requirement of Sec. 3189, *supra,* that the complainant in a divorce suit must have "resided" two years in the State before bringing suit, refers to a "legal residence" of the complainant, that is to say, the place of domicile or permanent abode of such person, as distinguished from a temporary residence. The word "residence" has a variety of significations depending upon its various applications, but used in this connection it is synonymous with "domicile" or "permanent abode". Herron v. Passailaigue, 110 South. Rep. 536.

In Phillmore's Law of Domicile (page 18), quoted with approval by this Court in Smith v. Croom, 7 Fla. 81, it is said that "domicile" answers very much to the common meaning of our word "home." Used in this connection, "legal residence" or "domicile" means a residence at a particular place, accompanied with positive or presump-

tive proof of an intention to remain there for an unlimited time. The term "domicile" was defined by the Roman Law, to mean "In whatsoever place an individual has set up his household goods and made the chief seat of his affairs and interests, from which, without some special avocation, he has no intention of departing; from which, when he has departed, he is considered to be away from home, and to which, when he has returned, he is considered to have returned home." The place where a married man's family resides is generally to be deemed his domicile, but the presumption from this circumstance may be overcome by other circumstances. Smith v. Croom, *supra.*

There is a recognized distinction between a residence for commercial purposes and such a residence as is necessary to support the jurisdiction of a court to adjudicate upon the duties and obligations growing out of the marital status. Keerl v. Keerl, 34 Md. 21. See also Smith v. Croom, 7 Fla. 81.

Judge Story said: "Domicile may be named under three distinct heads, namely, domicile of origin, which is the place of birth; domicile voluntarily acquired or domicile by choice; and domicile that is consequential, arising from a certain relation, as that of a wife arising from marriage." Story's Const. Law, Sec. 48. See also 9 R. C. L. 538.

Speaking through Mr. Chief Justice ELLIS, this Court in Warren v. Warren, 73 Fla. 764, 75 South. Rep. 35, has said: "A legal residence or domicile in this State may be acquired by one who, coming from another State or Country, actually lives in this State with the intention of permanently remaining here. In such a case a domicile by choice is established. * * * Legal residence consists of fact and intention. Both must concur. A domicile once established will continue until a new domicile is established

*facto et animo.''* See also Smith v. Croom, 7 Fla. 81. The mere intention to acquire a new domicile, unaccompanied by an actual removal, avails nothing; neither does the fact of removal avail without the intention. Beekman v. Beekman, 53 Fla. 858, 43 South. Rep. 923.

The establishment of purpose and intent in connection with the acquisition of a legal residence or domicile, said this Court in Smith v. Croom, *supra,* cited with approval in Warren v. Warren, *supra,* ''will usually depend upon a variety of acts and declarations, all of which must be weighed as we must weigh evidence on any other subject.''

Prior to October, 1920, the complainant's legal residence and domicile was elsewhere than the State of Florida, and appears to have been in the State of Minnesota. The original bill of complaint herein was filed on November 9, 1922. The complainant testified, in effect, at a hearing had on May 19, 1924, that he first came to Miami in December, 1919. In reply to the question, ''When did you make Miami, Dade County, Florida, your residence?'' the complainant answered, ''October, 1920.'' Complainant further testified, in effect, that he acquired such residence by bringing his family to Miami in October, 1920, and buying a residence for a home, subject to the approval of his wife, and that he has maintained that particular place for a residence ever since; has kept it furnished all along; that he came to Miami for the purpose of making it his residence; that his wife, the defendant, picked out and decided on the house above referred to; that he left St. Paul, Minn., with the intention of investing in Florida and making it his permanent home. If that were all the evidence on the question of complainant's residence, it might lead us to a conclusion other than the one we have reached. At a subsequent hearing, however, on August 30, 1924, complainant further testified that he bought the home to get his wife

away from his business in the North and thought he would bring her to Miami and ''make 'her' a home.'' That he sold out his business in Minnesota and came down to Florida on account of the trouble his wife caused him with his partners in business. Buying his wife a home in Miami ''to get her away from the business in the North, and bringing her to Miami to make 'her' a home'' might or might not indicate an intention on the part of the complainant to establish his own legal residence in Florida. It is, however, a circumstance to be considered in connection with the other testimony. There is no direct evidence by any other witness as to the complainant's *bona fide* legal residence in Florida during the two years next preceding the filing of the bill of complaint. Complainant's family consisted of himself, his wife, and one daughter, the latter about nineteen years of age when this suit was instituted. The daughter testified that she came to Florida in October, 1920, with her mother and father; that neither her father nor her mother ever adopted the State of Florida as a permnaent residence; that the three of them came to Miami in October, 1920, and stayed until May, 1921, when all of them returned to St. Paul, Minn.; that the complainant and defendant never abandoned St. Paul as their permanent place of residence; that after the complainant returned to St. Paul from Miami May, 1921, ''he was there (in St. Paul) until January of 1922, but he was away nearly all that time on trips, that is, until he left the next time, he was away that summer, and wasn't 'home' hardly at all.'' Mrs. Wade testified that upon their arrival in Miami, in October, 1920, they stayed at a hotel for five days while they looked around with different real estate men to ''rent a bungalow for the season''; that one of the real estate men suggested that they buy a place for an investment ''but we didn't want to buy because we didn't intend to stay here (Miami)''; that they

finally bought a place and that the defendant (not the complainant) furnished it, and the daughter went to school during the five months the family was in Miami; that neither the complainant nor the defendant ever took up their home or residence in Miami, nor did they abandon their residence in St. Paul; that the complainant still has some clothes in the St. Paul residence yet (meaning when the testimony was taken in 1924). Mrs. Wade further testified as follows: ''Q. Did he (Mr. Wade) ever acquire a residence here in Florida? A. No; we bought this bungalow as an investment the same as we did in England. Q. All told, how long have you lived in that house? A. About five months the first winter and about two months the second time I was down here, and just last Friday when I came back (referring to the time when the testimony was taken, May, 1924). Q. About, all told, how long has Mr. Wade lived in Miami? A. I have not known his whereabouts these last two years (evidently referring to the period from 1922 to 1924), but I don't think he lived in it (the house) much more than I have. He might have slept there two or three nights.''

· A witness for complainant testified that he visited the complainant and defendant ''in their home'' in St. Paul about twice a month from 1919 ''right up until 1922 or 1923, * * * used to go up quite often with Mr. Wade.''

Mr. Wade's buisness in St. Paul was that of President and General Manager of a motor bus company. A business associate of Mr. Wade in that company, testifying on behalf of the complainant, said that Mr. Wade became President and General Manager of the Twin City Motor Bus Company, of St. Paul, Minnesota, in May, 1915, and then assumed active management of that business; that he remained the active manager of that company until January, 1921, although he left St. Paul in September, 1920.

It further appears in the evidence that Mr. Wade during the winter of 1919-1920 organized and interested himself in the Florida Motor Transportation Company, operated in this State, of which he was President and General Manager, from about November, 1920, until about September, 1921, circumstances which might or might not indicate the acquisition of a legal residence in this State. His employment by that company terminated in September, 1921. With the exception of about two months spent here in the early part of 1922, Mrs. Wade and the daughter did not reside in the State of Florida after their departure in April, 1921, but were residing in St. Paul, Minnesota. During a portion of that time the Miami house was rented.

The evidence further indicates that during the two years immediately preceding the filing of the bill of complaint the complainant spent much of his time traveling around in the Northern and Eastern States, looking after his business interests, but the testimony is devoid of any determinative facts or circumstances other than those hereinabove referred to which would tend to establish a legal residence on the part of the complainant in Florida. The evidence further indicates that other than during the period from October, 1920, to September, 1921, and a short time in the early part of 1922, Mr. Wade spent very little of his time in Florida during the two years next preceding the filing of the bill.

Although the testimony shows that complainant and defendant returned to Miami for about two months during the early part of 1922, it also appears that the family was living as a unit in St. Paul at least from May to October, 1921, during which time many of the incidents complained of in the bill occured. During that period the complainant spent most of his time traveling in the North and East. The complainant testified that he returned from St. Paul

to Miami in January, 1922, to attend a meeting of a company in which he was interested and to get away from his wife who he claims was "nagging" him so that he could not get sufficient sleep and rest. The evidence shows, however, that he again departed from Florida after a stay of about two months, after which his movements are not clearly accounted for, nor does his intention to return again clearly appear.

We fully recognize the principle announced by this Court in Warren v. Warren, *supra*, that if the complainant in a suit for divorce "is or has become a *bona fide* resident of the State and intends to remain permanently a citizen of the State, mere absence with the intention of returning will not divest the courts of Florida of jurisdiction over such person or subject matter in proceedings of this nature." But it must appear that a *bona fide* legal residence was established and retained.

This Court has also on numerous occasions announced the principle that the findings of the chancellor on the evidence will not be disturbed unless such findings of fact are clearly shown to be erroneous. But where the decree of the chancellor is not supported by, but is contrary to the evidence. it will be reversed by this Court on appeal. Those principles are applicable in suits of this nature. See Mitchell v. Mitchell, 107 South. Rep. 630.

Testing all the evidence before us on the question of complainant's residence in this State by the rules of law announced in this opinion, we cannot escape the conclusion that complainant's evidence is insufficient to meet the burden upon him of proving the establishment, *animo manendi*, and the retention for two years of his *bona fide* legal residence in this State prior to the filing of the bill of complaint herein. The chancellor's decree granting the divorce is therefore unsupported by, and contrary to the

evidence upon the jurisdictional prerequisite of residence, and said decree must therefore be reversed.

Reversed.

ELLIS, C. J., AND WHITFIELD, TERRELL AND BUFORD, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting) :

I am inclined to think there was sufficient evidence to sustain the chancellor's finding as to the residence or domicile of the complainant. A man may have several residences, a summer home in the North and a winter home in Florida; but he can have only one legal residence or domicile. Where a person has two or more homes or residences, his legal residence or domicile becomes more than ever a question of his own *bona fide* intent. And when that intention is testified to as one of two residences owned or maintained by him, as in this case, the ownership or maintenance of the other is not as a matter of law *per se* sufficient to rebut such expressed intention. Of course the intent testified to is subject to contradiction by proof of outward conduct and circumstances showing a contrary intent, but I do not think the evidence along that line in this case sufficiently clear to authorize this court to disturb the chancellor's finding.