## Commonwealth v. Mulholland

*Wellington M. Bertolet,* for Commonwealth.
*Stevens & Lee* and *Allan K. Grim,* for defendant.

MAYS, J., June 21, 1943.—May G. Mulholland, prosecutrix in the instant case, instituted an action against defendant on March 10, 1939, alleging nonsupport. On April 27, 1939, the court entered an order directing defendant to pay $115 per month. On May 2, 1940, prosecutrix presented her petition alleging that the sum fixed was insufficient and praying for an order of support against defendant commensurate with his

income. On May 10, 1940, both parties being present, the court, after taking testimony, refused the prayer of the petition, allowing the order to remain in the sum as originally made.

Defendant has regularly paid the sum of $115 per month up to December 1942.

Defendant, David E. Mulholland, now contends that the order of court in this case should be revoked. In support of this contention he introduced in evidence at a hearing had an exemplification of the record in the case of Mulholland v. Mulholland as filed in the Circuit Court in and for Lee County, Fla., on April 21, 1941, wherein it appears that a decree of absolute divorce was granted complainant, David E. Mulholland, defendant in this action.

It is further contended by defendant that the decision of the Supreme Court of the United States filed December 21, 1942, in the case of Williams et al. v. North Carolina, 317 U. S. 287, makes it imperative upon this court to revoke the order of this court in the instant cause of action for the reason that full faith and credit must be given to the judgment and decree of a sister State, in this instance the State of Florida.

Article IV, sec. 1, of the Constitution of the United States provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State."

If the judicial proceedings relied upon are such as are contemplated by the Constitution, we are without right to disregard such a mandate, particularly if the United States Supreme Court has ruled that such a proceeding comes within said provision of the Constitution. Whatever our personal ideas or opinions may be, we must recognize what has become an established principle, viz, that in all cases involving a construction of the Federal Constitution the courts of the United States have final authority and their decisions are binding on the State courts.

"When a state court refuses credit to the judgment of a sister state because of its opinion of the nature of the cause of action or the judgment in which it is merged, an asserted federal right is denied and the sufficiency of the grounds of denial are for this court to decide": Titus v. Wallick, 306 U. S. 282, 291.

As we view the present record, there are a number of questions involved, and these will engage our attention, viz: Is the exemplified record of the Circuit Court of Lee County, Fla., such a judicial record as is entitled to be given full faith and credit in this State? Or may the validity of said record be impeached by a finding of this court that the Circuit Court of Lee County had no jurisdiction over the parties or the subject matter of the action notwithstanding the "full faith and credit" clause of the United States Constitution?

By Rev. Stat., §905, 28 U. S. C. §687, enacted under authority of the full faith and credit clause of the Constitution, the duly-attested record of the judgment of a State is entitled to such faith and credit in every court within the United States as it has by law or usage in the State from which it is taken.

The Supreme Court of the United States, in Adam v. Saenger, 303 U. S. 59, 62, referring to an exemplified record of a sister State, said:

"If it appears on its face to be a record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself."

The exemplification introduced into evidence in the instant case on its face appears to be a record of a court of general jurisdiction, and jurisdiction over the cause and the parties will be presumed unless disproved, first, by the record itself, or, second, by extrinsic evidence.

In Commonwealth ex rel. v. Parker, 59 Pa. Superior Ct. 74, 76, it is said: "If there were nothing else in the case [than the exemplified copy of the Nevada divorce decree] to prevent full faith and credit being given to

its judgment, the case of the appellant would have been made out."

In this case, as we will point out, more appears than the decree itself.

### As to the record

There is the absence of a finding by the Florida court that Mulholland was domiciled in that State when he applied for the divorce; and what is more, the evidence would not support such finding. Because of the nature of the proceeding and in view of the evidence and the method of its procurement, we think that this divorce decree, if it would not be vacated, would at least be opened and the matter subjected to a more exact and full inquiry.

In Weinstein et al. v. State, 9 So. (2d) 710, the Supreme Court of Florida said (p. 712) :

"It has been the established law of Florida for seventy-five years, or more, that a divorce proceeding consists of three parties: (a) The plaintiff; (b) the defendant; and (c) the State of Florida. While the State of Florida has not by statute established a public officer charged with the duty to defend divorce suits like many States of the Union, the court, entertaining jurisdiction of the divorce suit, by law is charged with the solemn duty and obligation to protect the public and incidentally those persons not before the court."

And again (at p. 713) :

"The two years residential requirements prior to filing a divorce suit in the courts of Florida obtained for a period of eighty years and was altered by the enactment of Chapter 16009, Acts of 1933. Chapter 16009 and 16975, supra, reduced the residential period in Florida prior to filing a divorce suit, but otherwise did not change, alter or amend the law of Florida applicable to divorce."

In Wade v. Wade, 113 So. 374, the Supreme Court of Florida pointed out what is necessary to make one a

legal resident of the State of Florida. Relating to the prerequisite residence in Florida of a complainant in a suit for divorce, the court points out that the word "reside" has reference to the complainant's legal residence, which means the place which an individual has made the chief seat of his household affairs or home interests, from which, without some special mission, he has no intention of departing, from which, when he has departed, he is considered to be away from home, and to which, when he has returned, he is considered to have returned home.

In that case it was definitely pointed out, at page 377, that in order to justify the chancellor in granting a divorce "it must appear that a bona fide legal residence was established and retained".

The word "appear" as here used necessarily has a very definite meaning. It signifies that which is "made clear by evidence or reasoning; that which is proved or shown": 6 C. J. S. 1.

Here the cause of divorce occurred in another State and the complainant left his domicile in Pennsylvania and went to Florida. Under these circumstances the record must be free from ground for suspicion and the testimony as to the residence of the libellant must be clear and satisfactory. When the evidence fails to establish such fact, the court is without jurisdiction.

Giving to Mulholland's testimony and that of the one witness, his sister, all the convincing power it carries with it to an impartial mind, one is unable to determine that he lost his residence in the City of Reading and became a bona fide resident of the State of Florida. Mulholland sought to establish his place of residence with his sister at Fort Myers, Fla. All that appears from his testimony is that there was at his disposal a room in the house of his sister of which he might make such use as he saw fit. We say, as did the court in Frazer v. Frazer, 71 Pa. Superior Ct. 382, 384:

"She [he] had no legal status there, except as a guest. She [he] had no furniture whatever of her [his] own installed in the room. She [he] did keep some clothes there and from time to time when she [he] visited the City of Philadelphia [Fort Myers, Florida] made that her [his] stopping place. There is much evidence that nothing more could justly be predicated of her [his] relation to that property than that she [he] was welcome as her [his] cousin's [sister's] guest to make any reasonable use of it she [he] chose to make; but it is reasonably clear, from the evidence of unbiased witnesses, that her [his] visits thereto were comparatively infrequent and for rather short spaces of time. Had her [his] libel been filed in the State of New York [Pennsylvania], it would be difficult to see in the record before us anything that would have warranted the courts of that state in denying her [him] relief on the ground merely that she [he] had lost her [his] residence therein. It is quite certain she [he] was not a resident of both states."

In Wade v. Wade, supra, the court said (p. 377) :

"This court has also on numerous occasions announced the principle that the findings of the chancellor on the evidence will not be disturbed unless such findings of fact are clearly shown to be erroneous. But where the decree of the chancellor is not supported by, but is contrary to, the evidence, it will be reversed by this court on appeal."

Testing the evidence produced, the words of Strum, J., in Wade v. Wade, supra, at page 377, are:

". . . we cannot escape the conclusion that complainant's evidence is insufficient to meet the burden upon him of proving the establishment, animo manendi, and the retention for two years [now ninety days], of his bona fide legal residence in this state prior to the filing of the bill of complaint."

It was the duty of the chancellor in this case, even though there was the decree pro confesso and the ab-

sence of defendant, "to proceed with the same formality as if such defendant was present and maintaining the keenest opposition": Strum, J., in Wade v. Wade, supra, page 375.

It was held in Davis v. Davis, 305 U. S. 32, 41, in ascertaining the existence of matrimonial domicile as a basis for jurisdiction of a husband's suit for divorce, "care should always be taken to determine upon the facts and circumstances of each case whether, in accordance with the general rule, it is the domicil of the husband."

At the hearing, counsel asked questions as follows:

"Q. Where is your place of residence in the City of Fort Myers, Fla.?

A. 4201 McGregor Boulevard.

Q. I understand you established your residence in Florida in May last year, is that correct?

A. That is right.

Q. Have you within the last twelve months been in Florida in excess of three months?

A. I have.

Q. Have you made any effort to register to vote here?

A. I have.

Q. Do you maintain a safety deposit box in Fort Myers for your valuables?

A. I do.

Q. Have you vacated out of Florida at any point within the last twelve months?

A. I have not.

Q. Of what state are you now a citizen and resident?

A. Fort Myers, Florida.

Q. Have you been such citizen and resident for more than ninety days last past prior to the date of the filing of complaint herein?

A. I have.

Q. Do you and have you kept since last May any clothes at the residence in Fort Myers?

A. I have, continuously."

We say, as did the Supreme Court of Florida in Chisholm v. Chisholm, 125 So. 694, at page 701:

"In the questions propounded by complainant's attorney to her it will be observed that he asked leading questions in a way to cover certain statutory phraseology, and the complainant merely assented thereto. This method of adducing testimony in ex parte hearings in divorce cases should be disapproved. The law requires the witness to testify and counsel to ask questions without indicating the answer desired from his own witness.

"Where testimony is adduced in such method, the chancellor should promptly return it to the master, with directions to take the testimony in accordance with the rules which prohibit a solicitor from reciting the desired answer in his questions and requiring the witness to admit it by answering 'I do' or 'I have' or 'Yes'."

The courts of Florida have also pointed out that the uncorroborated testimony of the complainant is insufficient to support a decree of divorce: Dean v. Dean, 99 So. 816; Hickson v. Hickson, 45 So. 474; Homan v. Homan, 198 So. 20; Chisholm v. Chisholm, supra; Wade v. Wade, supra.

Mrs. Dolson, the sister of Mulholland, was asked these questions:

"Q. You have heard him testify as to the situation at Punta Gorda. Do you know whether of your own knowledge those facts are true?

A. Yes, I do.

Q. You and your husband and your brother maintain a residence in Fort Myers, Florida?

A. Yes, sir.

Q. Does Mr. Mulholland pay any portion of the expenses of that house?

A. Yes, he has contributed to the expense."

Her conclusion that what was testified to by her brother was true is in fact no testimony at all. She too

should have been asked to state, without any suggestion, his manner of living, if she knew, in Florida and in Reading.

She was also called for another purpose, to establish that at the time of the hearing and at the time of the filing of the complaint Mr. and Mrs. Mulholland were living separate and apart. Why did he find it necessary to call upon her so to testify when he had the means of establishing the fact that they were living apart by the use of the record of this court which shows that on April 27, 1939, he was ordered to pay for the support of his wife from whom he was separated, an order which he complied with until December 1942?

Since the record discloses that the law of Florida was not complied with, there is no presumption of the validity of the decree itself.

### As to extrinsic evidence

In A. L. I. Restatement of Conflict of Laws 168, §111, it is said:

"A finding of domicil by a court in a divorce proceeding [and in this case, as already pointed out, the Florida court did not so find] cannot create jurisdiction. Domicil, like any other jurisdictional fact, is subject to collateral attack in any other state by a party who was not personally before the court when the decree of divorce was granted."

In Commonwealth ex rel. v. Yarnell et al., 313 Pa. 244, our Supreme Court said (p. 251):

"It is true that a foreign divorce may be attacked collaterally by the defendant spouse where his or her rights are involved. It may also be attacked by persons claiming under the defendant spouse. The right to impeach collaterally a decree of divorce made in another state by showing fraud or want of jurisdiction has been frequently recognized."

In 17 Am. Jur. 559, §743, it is said:

"Jurisdiction over the subject matter of divorce rests upon domicil, or at least residence animo manendi, of

at least one of the parties; and it is established by the great weight of authority that notwithstanding the full faith and credit provision of the Federal Constitution, a decree of divorce rendered in one state may be impeached and denied recognition in another upon the ground that neither of the parties had such domicil or residence at the divorce forum, in spite of the recitals in the decree or record from the other state of the jurisdictional fact of residence."

In Streitwolf v. Streitwolf, 181 U. S. 179, the United States Supreme Court recognized the power of this court to determine whether or not Mulholland was a resident of the State of Pennsylvania at the time of the filing of his complaint in Florida. Justice Gray there said (p. 182):

"The law of North Dakota requires a domicil in good faith of the libellant for ninety days as a prerequisite to jurisdiction of a case of divorce . . . The facts in evidence warranted, and indeed required, the finding that the husband had no *bona fide* domicil in the State of North Dakota, when he obtained a divorce there, and it is not pretended that the wife had an independent domicil in North Dakota, or was ever in that State."

In that case the wife obtained an injunction against her husband from setting up a pretended judgment obtained in another State, in bar of a divorce proceeding. The decree was affirmed by the Court of Errors and Appeals of the State of New Jersey, which was affirmed by the Supreme Court of the United States.

There was extrinsic evidence produced at the hearing before this court which shows that Mulholland at the time of filing his complaint was a resident of the City of Reading.

We find these facts:

1. That during the period from May 1, 1940, to April 30, 1941, David E. Mulholland was domiciled in Berks County, Pa.

2. That during the same period his wife, May G. Mulholland, was domiciled in Niagara Falls, N. Y.

3. That May G. Mulholland did not at any time appear in Florida to take any action in respect to the divorce action against her or for any other reason.

4. That May G. Mulholland did not in person or by attorney or in any other manner enter an appearance in the Florida divorce action.

It is undisputed that until May 1940 Mulholland was domiciled in Berks County, Pa. At the argument, unsupported by any testimony heard by us, the contention was made that, beginning in May 1940, his domicil was changed to the county in Florida in which his divorce was granted. The Commonwealth's evidence clearly shows that Mulholland was in Reading during the entire month of May 1940, and except for the first 15 days of June 1940 he was in Reading all of June. He remained in Reading except for a few days from time to time until February 14, 1941, from which time he was absent from the city until March 27, 1941. He was absent again on April 8, 9, and 10, 1941, and from April 13 to 22, 1941, inclusive, at which time he returned and has been in Reading ever since. This is shown by the testimony of the secretary of the Wyomissing Club, his testimony showing in detail the days on which he occupied his room at the club. The secretary's testimony is based on the records of the club, which in turn are based on checks which were signed by Mulholland and which show conclusively that he was there on the days upon which they were signed.

The housekeeper at the club substantially corroborated the secretary's testimony.

The records of the Birdsboro Steel Foundry & Machine Company show that Mulholland was steadily employed by the said company and paid regularly by it during the period when he contends he was a resident of Florida.

The records of the Berks County Trust Company, which is the bank where he maintained his account,

show that Mulholland had a balance continuously in his bank account from July 1939 to the present time.

The records of the Reading School District show that Mulholland was assessed for per capita tax and that this tax was paid promptly in 1940, 1941, and 1942. A per capita tax is assessed only against residents of the City of Reading.

The records of the County of Berks show that Mulholland was assessed for occupation tax for the years 1940, 1941, and 1942, and in each case he paid his occupation tax promptly. This tax is assessed only against residents of Berks County.

Mulholland was present at the hearing in this court. He did not testify. He seeks to have revoked the order of this court because, as he contends, he acquired a legal residence in the State of Florida, and after so doing, procured a divorce. His failure to testify and submit to proper inquiry on the part of his wife's counsel and the court is highly significant. He is a man of extraordinary intelligence and must know that his failure to testify when he has a strong motive to do so would be evidence against him. If these things which were testified to by the secretary and the housekeeper of the club and other witnesses called did not happen or exist as testified, he had a very strong motive to testify and by his presence on the stand to assist the court in determining whether he was or was not a resident of the City of Reading. Omitting to do that, he left his motive in failing to testify to be determined by the trial judge.

From all of his testimony we are of the opinion that Mulholland was not acting in good faith, and that his sole purpose in going to Florida was not to make that his place of residence, but merely to establish a temporary domicile for the purpose of obtaining a divorce by constructive service.

We conclude that the Circuit Court of Lee County, Fla., never acquired jurisdiction over May G. Mulholland or had any power to pronounce a decree of

divorce which was binding on her, and that said decree is void so far as it affects the rights of the wife in the present proceeding.

The Williams case, supra, is not controlling as contended for by the petitioner. Since neither of the parties to this cause was domiciled in Florida and that State was not the matrimonial domicile, this court is not required even under the Williams case to grant full faith and credit to the Florida divorce.

The majority opinion in the Williams case rested upon the admission of the North Carolina Attorney General (p. 291), that "there probably is enough evidence in the record to require that petitioners be considered 'to have been actually domiciled in Nevada' ". At page 302 Mr. Justice Douglas says:

"But the question for us is a limited one. In the first place, we repeat that in this case we must assume that petitioners had a *bona fide* domicil in Nevada, not that the Nevada domicil was a sham. We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident, as distinguished from a domiciliary, is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was acquired in Nevada."

The doctrine of Bell v. Bell, 181 U. S. 174, we believe, has been preserved by the majority opinion in the Williams case, and until that case has been overruled it is the decision that controls here. It was held in that case that a Pennsylvania court has no jurisdiction over a suit for divorce against a resident of the State of New York by a party who is not a bona fide resident of Pennsylvania; and so in the instant case we hold that a Florida court has no jurisdiction of a

suit for divorce against a resident of the State of New York by a party who is not a bona fide resident of Florida.

And now, to wit, June 21, 1943, the rule to show cause is discharged.