Walton **HARDIN**

v.

**James L. McAVOY and Knox Corporation.**

No. 15012.

United States Court of Appeals
Fifth Circuit.

Oct. 29, 1954.

Rehearing Denied Jan. 10, 1955.

Walton Hardin, Dan H. Stubbs, Jr., Jacksonville, Fla., for appellant.

Henry G. Neal, Knox & Neal, Thomson, Ga., Earle Norman, Washington, Ga., for appellees.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

What and all that is for decision here is whether the district court erred in dismissing plaintiff's suit for want of jurisdiction on the ground that both plaintiff and defendants were citizens of Georgia.

The question comes to us in this way. On July 28, 1953, plaintiff below, appellant here, alleging himself to be a citizen of Florida, brought this suit for conversion of timber of the value of $16,400.

On August 28th the defendants filed their answer admitting in it that the amount in controversy was in excess of the required jurisdictional amount, but denying plaintiff's claims of conversion and setting up other defenses.

On August 31st, alleging that plaintiff was a resident of Washington County, Georgia, "and as such there is no diversity of citizenship", defendants moved to dismiss the suit for want of jurisdiction. The motion coming on for hearing on September 18th, and both plaintiff and defendants appearing and offering evidence, the district judge, stating "Well, it gets down to a question of law", took

the motion under advisement. Thereafter, on January 4, 1954, without making findings of fact or otherwise stating his reasons, he entered an order dismissing the suit, and plaintiff has appealed.

Neither below nor here was attention called to the insufficiency of the motion on its face in attacking plaintiff's residence rather than his citizenship, but the parties and the district judge have treated the motion as properly presenting the diversity issue, and we will so treat it.

■ Insisting that upon the undisputed testimony which was accepted by

the judge as true, he was and is as matter of law a citizen not of Georgia but of Florida, and that the order was improvidently entered, appellant is here urging upon us that it must be reversed.

We agree with him that this is so.

This is not to say that there are not in the record shreds and bits of evidence [1] which, standing alone, might smack of equivocation and tend a little to becloud his claim. It is to say, though, that such clouds as there are are no bigger than a man's hand, trifles light as air, and that, in the full light of plaintiff's undisputed testimony [2] and the settled law,[3] the con-

1. The deeds, the charter, the Georgia partnership, the post office address, the answer of plaintiff, "As soon as I make enough money in Florida, I intend to go back and farm", which but for the acceptance by the cross examiner of the meaning plaintiff intended the words to have, might, as a matter of pure semantics, have seemed equivocal.

2. As pertinent here, this was:
"Q. Mr. Hardin, are you the plaintiff in this case? A. I am.
"Q. Where do you live, Mr. Hardin? A. 311 West Ashley Street, Jacksonville, Florida.
"Q. Are you married, Mr. Hardin? A. Yes, I am.
"Q. Where does your wife live, Mr. Hardin? A. She lives at the same address.
"Q. How long have you lived in Florida, Mr. Hardin? A. Since June 4, 1951.
"Q. Mr. Hardin, when was the last time you voted in the State of Georgia? A. I voted in the Presidential Election in 1948.
"Q. Mr. Hardin, have you voted at any place since that time? A. I voted in three primaries in Florida during the year 1952, and also in the General Election, Nov., 1952.
"Q. Are you qualified to vote in Florida at the present time, Mr. Hardin? A. Yes, I am.
"Q. What is your citizenship? A. I consider myself a citizen of Florida.
"Q. Do you practice law in Florida at the present time? A. Yes, I do.
"Q. Is this a certificate of your Board of Registration in the State of Florida? A. It shows that I am a registered voter in Duval County in the State of Florida.
The Court: What is that you say?

The Witness: This is a Registration Certificate, No. 7813, and shows that on March 18, 1952, I registered as a voter in Precinct 5–G, Jacksonville, Duval County, Florida.
"Q. Mr. Hardin, are you a resident of the State of Georgia? A. No, sir.
"Q. Have you maintained a business address in the State of Georgia, or any type of address? A. I have a commercial address there, and am interested in several industries and businesses in Washington.
"Q. What has been and what is now your business address in Georgia? A. I have box 389, as my mailing business address, and I also have a law office of Hardin and Lynn there.
"Q. You are living in Jacksonville, Florida, at the present time and at the commencement of this suit? A. I lived in Jacksonville, Florida, and I practiced law in Jacksonville, Florida, and I teach school in Jacksonville, Florida. I have a Florida Teacher's license. I teach income tax and state banking courses at night.
"Q. Mr. Hardin, will you state whether or not you claim any homestead exemption in the State of Georgia at the present time? A. No, sir. I claim homestead exemption in the State of Florida, and not in the State of Georgia.
"Q. How long have you continuously been a citizen of Florida? A. I graduated from Duke on June 3, 1951, and moved to Florida on June 4th, and started to work on the afternoon of June 4th, 1951, and have been there continuously since that time.

3. Gallagher v. Philadelphia Transp. Co., 3 Cir., 185 F.2d 543; Pandler v. Pandler, 5 Cir., 185 F.2d 901; Stine v. Moore, 5 Cir., 213 F.2d 446.

clusion is inescapable that when the suit was brought and this record made, plaintiff was domiciled in, and was a citizen of, Florida, and not of Georgia.

■■. Since the district judge gave no reason for deciding the case against plaintiff, we cannot say whether he was misled, by the statement that an essential requisite to the acquisition of a domicile is an abiding intention to make the place of residence home, into thinking that the possibility of eventually living elsewhere, or even of returning whence one came, would prevent the acquisition. It is quite possible, though, in view of the lack of precision [4] sometimes attending the statement of the controlling principle, that the district judge may have fallen into the error in this case into which the district judge fell in Gallagher v. Philadelphia Transp. Company, note 3, supra. This error was attaching an incorrect significance to the word "permanent" sometimes used in discussing the animus manendi requisite in acquiring a new domicile, with the result of incorrectly concluding, from plaintiff's testimony, that he anticipated moving to Washington, Georgia to go back and farm as soon as he had made enough money in Florida, that, as matter of law, plaintiff's residence in Florida was not joined with the requisite animus manendi.

■■ In Judge Hastie's excellent opinion in the Gallagher case [185 F.2d 546], the error and effect of this kind of reasoning is thus clearly and incisively pointed out:

" * * * But the substitution by the court of emphasis on the word 'permanent' in its Findings indicates to us that the court was using 'abiding' to exact the same standard, that is, that the plaintiff have had an affirmative intention permanently to attach herself to Oregon or California.

"While we concede that there is a good deal of rather ambiguous talk in the cases, some of which might arguably be taken to support this position, we think that it is incorrect. The emphasis of the court on the permanence of the anticipated attachment to a state, in our opinion, required too much of the plaintiff.

"There is substantial concurrence in the correctness of the negatively stated proposition that it is the absence of an intention to go elsewhere which is controlling. Gilbert v. David, 1915, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360; see Williamson v. Osenton, 1914, 232 U.S. 619, 624, 34 S.Ct. 442, 58 L.Ed. 758; Williams v. North Carolina, 1942, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279. It is enough to intend to make the new state one's home. Restatement, Conflict of Laws (1934) §§ 19, 20; Chicago & N. W. Ry. Co. v. Ohle, 1885, 117 U.S. 123, 6 S.Ct. 632, 29 L.Ed. 837. It is not important if there is within contemplation a vague possibility of eventually going elsewhere, or even of returning whence one came. Goodrich, Handbook of the Conflict of Laws (3rd ed. 1949) § 28; see Gilbert v. David, supra, 235 U.S. at page 569, 35 S.Ct. at page 166. If the new state is to be one's home for an indefinite period of time, he has acquired a new domicile. Mid-Continent Pipe Line Co. v. Whiteley, 10 Cir., 1940, 116 F.2d 871. Finally, it is the intention at

---

4. For instance, in Maple Island Farm v. Bitterling, 8 Cir., 196 F.2d 55, at page 58, it is said:

"Loss of citizenship in a state results for the purpose of diversity when a citizen of the state changes his abode or domicile with no intention of returning to his former abode or home."

though immediately following this sentence appears a quotation from the same court in Spurgeon v. Mission State Bank, 8 Cir., 151 F.2d 702, at pages 705–706, which correctly states the rule thus:

"To acquire a domicil of choice, the law requires the physical presence of a person at the place of the domicil claimed, coupled with the intention of making it his present home. When these two facts concur, the change in domicil is instantaneous."

the time of arrival which is important. The fact that the plaintiff may later have acquired doubts about remaining in her new home or may have been called upon to leave it is not relevant, so long as the subsequent doubt or the circumstance of the leaving does not indicate that the intention to make the place the plaintiff's home never existed. Shoaf v. Fitzpatrick, 6 Cir., 1939, 104 F.2d 290, certiorari denied 1939, 308 U.S. 620, 60 S.Ct. 295, 84 L.Ed. 518; Stockyards National Bank v. Bragg, 8 Cir., 1928, 293 F. 879."

■ Finally, it must be kept in mind that a person may not have two domiciles, two citizenships, at the same time, and that while intention and presence when joined are significant and important elements, a mere detached, indefinite and ambulatory future intention to possibly or probably effect a change of domicile, not attached to and fixed at a particular residence at a particular place and time is of no real significance. Thus it is settled law that when present intention and place of residence conjoin, a mere indefinite or future intention to choose some other domicile at some indefinite time in the future, cannot divest a present domicile to confer another.

While the cases dealing with questions of citizenship and domicile are legion, and because they are, discrepant statements have sometimes crept into some of the opinions, those that speak with authority speak with one voice on the point at issue here. If, therefore, the shoe were on the other foot, and plaintiff, sued in Florida, were seeking to defeat jurisdiction with the claim that, because he intended some day to return to Georgia, he was a citizen, not of Florida, but of Georgia, he would certainly, in the face of the undisputed testimony in this case, be unable to do so.

■ Because we have decided that the requisite diversity exists, and the court has jurisdiction of the cause, it will be unnecessary for us to discuss the contention of the appellant that, under the Seventh Amendment, he was entitled to have the question tried to a jury or to say more of it than that the contention is without legal basis and that while the court may, if it so desires, submit such questions to a jury, the normal and usual course is for them to be determined by the judge either on his own motion or on that of the parties.[5]

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

5. In Wetmore v. Rymer, 169 U.S. 115, at pages 120–121, 18 S.Ct. 293, at pages 295, 296, 42 L.Ed. 682, the leading case on the subject, the court holding that the trial court may properly determine the question of jurisdictional amount without submitting it to the jury said:

"The statute does not prescribe any particular mode in which the question of the jurisdiction is to be brought to the attention of the court, nor how such question, when raised, shall be determined.

\*　　\*　　\*　　\*　　\*

"In such cases, whether the question was raised by the defendant or by the court on its own motion, the court might doubtless order the issue to be tried by the jury

\*　　\*　　\*　　\*　　\*

"But the questions might arise in such a shape that the court might consider and determine them without the intervention of a jury. And it would appear to have been the intention of Congress to leave the mode of raising and trying such issues to the discretion of the trial judge."

This holding has been uniformly followed and must be regarded as settled beyond question. Gilbert v. David, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360; McNutt v. General Motors Acc. Corp., 298 U.S. 178 at page 186, 56 S.Ct. 780, 80 L. Ed. 1135; Gallagher v. Philadelphia Transp. Co., 3 Cir., 185 F.2d 543; Maple Island Farm v. Bitterling, 8 Cir., 196 F. 2d 55; Land v. Dollar, 330 U.S. 731, at page 735, note 4, 67 S.Ct. 1009, 91 L.Ed. 1209.