**Charles R. CHANEY, Plaintiff,**

v.

**WILSON–BENNER, Inc., Defendant and Third-Party Plaintiff**

**and**

**Max Kofman, Edward Kofman, Benjamin F. Kofman, Joseph Kofman, and Freda K. Gaines, Co-Partners, trading and doing business as Kofman's, Defendant.**

**WILSON–BENNER, INC., Third-Party Plaintiff**

v.

**PITTSBURGH–DES MOINES STEEL CO., Third-Party Defendant.**

Civ. A. No. 5995.

United States District Court
M. D. Pennsylvania.

Aug. 19, 1958.

Robert K. Kistler, State College, Pa., for plaintiff.

Metzger, Wickersham & Knauss, Harrisburg, Pa., for Wilson-Benner, Inc., defendant and third-party plaintiff.

Hull, Leiby & Metzger, Harrisburg, Pa., for Max Kofman et al., defendant.

Richard Henry Klein, Robert McK. Glass, Sunbury, Pa., for Pittsburgh-Des Moines Steel Co., third-party defendant.

FOLLMER, District Judge.

This matter is before the Court on defendants' motion to dismiss the claim because the requisite diversity of citizenship and jurisdiction on the subject matter does not exist in that both plaintiff and defendants were at the time of the institution of the action citizens of Pennsylvania.

Several depositions were taken, including that of the plaintiff. The parties were then requested to furnish suggested Findings of Fact. The Findings submitted by defendants coincide precisely with the views I hold after a careful review of all the pleadings, including the depositions, and I therefore adopt the same, Nos. 1 to 23, inclusive, as my Findings of Fact as follows:

Findings of Fact

1. Plaintiff was born and lived in Milford, Delaware, until August 23, 1949, when he went into the army.

---

2. His parents and four brothers and two sisters still live in Milford, Delaware.

3. Upon the plaintiff's release from the army on December 6, 1952, he returned to his home in Milford, Delaware.

4. Sometime between December 6, 1952, the date the plaintiff was released from the army, and April 1953, the plaintiff was employed by Pittsburgh-Des Moines Steel Company and has worked for them ever since that time.

5. Up until the time the plaintiff was injured he worked as a rigger and welder in the construction of water tanks and in that position traveled all over the states of Indiana, Ohio, Michigan, Pennsylvania, New Jersey and Virginia, wherever his employer might have a construction contract. The plaintiff stayed at one place from four weeks to three months, until the job was completed and then moved to the next.

6. The plaintiff met his future wife in December 1953, in Avon Lake, Ohio, while on a job there.

7. The plaintiff was married July 1954, in Indiana, and bought a trailer for his wife and himself to live in as he moved from place to place in his job.

8. At first the plaintiff and his wife lived in the home of his wife's grandmother in Ohio, but in January 1955, the plaintiff and his wife moved into the trailer and have lived in one to the present date, moving it to wherever the plaintiff might be working.

9. On January 16, 1956, the plaintiff received the injury at State College for which the within suit is brought.

10. From the date the plaintiff was injured until May 1, 1956, the plaintiff and his wife remained in State College, Pennsylvania, to recuperate.

11. On May 1, 1956, the plaintiff moved his trailer to Coraopolis, Pennsylvania, and began to work in his employer's nearby plant on Neville Island, Allegheny County, Pennsylvania. From that date to the present the plaintiff has not moved as the Company gives a job in one location to those who are hurt.

12. Plaintiff can no longer move around to do construction work as he cannot climb up in air.

13. Plaintiff intends to continue working for Pittsburgh-Des Moines Steel Company in Neville Island, Pennsylvania, as long as he has a job.

14. The plaintiff's trailer has not been out of Pennsylvania since October 1955.

15. The plaintiff registered his first trailer in Ohio, the second one in Pennsylvania, but it is no longer registered as he is not moving it around.

16. The plaintiff's wife went back to Ohio to have their first child, but the second child was born November 29, 1956, in the Sewickley Valley Hospital, Pennsylvania, and the third one December 1, 1957, at the same place.

17. The plaintiff has never paid any taxes in Ohio.

18. The plaintiff owns no real estate in Ohio.

19. The plaintiff filed his 1955 Federal Income Tax statement in State College, Pennsylvania.

20. The plaintiff filed his 1956 and 1957 Federal Income Tax statements in Pittsburgh, Pennsylvania.

21. The plaintiff registered to vote in Ohio at the suggestion of counsel so that he could bring suit in Federal Court.

22. The plaintiff has not voted since he registered.

23. The plaintiff finances his trailer at the Philadelphia National Bank.

24. Plaintiff's registration to vote having been done at the suggestion of his counsel for the sole purpose of furnishing a jurisdictional base for his action in this Court, had no relation to any genuine intent to establish a then present domicile in Ohio.

25. Plaintiff's expressed intention to continue working for Pittsburgh-Des Moines Steel Company in Neville Island, Pennsylvania, so long as he has a job, clearly indicates his intention to maintain his home in nearby Coraopolis, Pennsylvania, for an indefinite time.

### Discussion

This case is another variant in the myriad of cases involving domicile as a prerequisite to jurisdiction. The plaintiff led a sort of nomadic life, his home on wheels followed his job. His work as a rigger and welder with a construction concern necessitated his moving from one finished job to a new one at a different location. This employment kept him moving to four different states. He had no permanent base.

It was while working on such a construction job in State College, Pennsylvania, that on January 16, 1956, he suffered the injuries which form the basis of the instant action. After a period of hospitalization and recuperation at State College, he moved his family in his trailer to Coraopolis, Pennsylvania, and began to work in his employer's nearby plant on Neville Island, Allegheny County, Pennsylvania, with the expressed intention of continuing in that work so long as he had a job.

His wife was a resident of Ohio and for several months after their marriage they lived with a relative of the wife. After that they frequently returned to the relative's home in Ohio, obviously on a visitation basis.

Plaintiff never voted, nor paid local taxes anywhere. He belonged to no organizations, nor any local union. He joined a Church in Ohio, but never attended it although he had a child baptized at this Church.

After the accident, on the advice of his counsel, he registered in Ohio for voting for the sole purpose of meeting the jurisdictional requirement preparatory to the institution of this suit.

Plaintiff argues that there is nothing in the record to indicate any intention by plaintiff or his wife to remain permanently or indefinitely in the State of Pennsylvania. On that hypothesis the plaintiff is clearly out of court as that is not the test.

In Gallagher v. Philadelphia Transp. Co., 3 Cir., 185 F.2d 543, 544, plaintiff, her husband and two children by a former marriage came to Philadelphia from California in 1944, intending "to take up life anew in a new area"; each took permanent positions and lived in Philadelphia continuously until December 1947. Early in 1946 the husband was convicted of a felony and sentenced to prison for five to ten years. Plaintiff had lived in Oregon during her childhood. In October 1946, she sent her two children to her brother in Oregon. She stated she intended to go to Oregon and make her home there as soon as her husband's parole status was determined. Meantime, she stayed in Philadelphia, got a job and lived in a rented room. In July 1947, she was injured which gave rise to the instant action. She was hospitalized for seven weeks and thereafter stayed in various furnished rooms in Philadelphia. In December 1947, she joined her children and brother in Oregon, stating it was her intention to make her home there. With the exception of an interlude of seven months due to illness of a child, she lived thereafter in Oregon continuously until time of suit. In her complaint she claimed she was a citizen of Oregon. She had no business interests or property in Pennsylvania, nor a voting residence there. She did state that prior to moving to Oregon she consulted her attorneys and they approved. The court held, in finding that it was without jurisdiction, that plaintiff was a resident and inhabitant of Pennsylvania, that she had never formulated any intention of residing permanently elsewhere. The court, on appeal, held that the emphasis of the lower court on the permanence of the anticipated attachment to a state required too much of the plaintiff. The court furthermore held,

"* * * If the new state is to be one's home for an indefinite period of time, he has acquired a new domicile. (Citations) Finally, it is the intention at the time of arrival which is important. The fact that the plaintiff may later have acquired doubts about remaining in her new home or may have been called upon to leave it is not relevant, so long

as the subsequent doubt or the circumstance of the leaving does not indicate that the intention to make the place the plaintiff's home never existed. * * * " [1]

In the light of the opinion of the court in Gallagher, supra, there can be no question but that plaintiff in the instant case intended to make his home in the vicinity of Pittsburgh, Pennsylvania, and by so doing acquired a domicile there.

### Conclusions of Law

1. On July 12, 1957 and October 29, 1957, the dates respectively of the filing of the original and amended complaints, plaintiff was domiciled in and a citizen of the State of Pennsylvania.

2. Diversity of citizenship does not exist in this case.

An appropriate order will be entered.

---

1. See, also, Hardin v. McAvoy, 5 Cir., 1954, 216 F.2d 399, 402.