164 So.2d 561 (1964)
Ruben L. PEREZ, Appellant,
v.
Susan E. Ruiz De PEREZ, Appellee.
No. 63-904.
District Court of Appeal of Florida. Third District.
May 27, 1964.
*562 Thomas B. Duff, Miami, for appellant.
No appearance for appellee.
James A. Dixon, Miami, amicus curiae.
Before CARROLL, TILLMAN PEARSON and HENDRY, JJ.
CARROLL, Judge.
Appellant is a refugee from communist Cuba. It can be assumed that he intends to remain here for an indefinite period,[1] that is, until Cuba is no longer communistic and freedom is restored there. His presence here is sanctioned under our immigration laws, on a temporary basis as provided for in Title 8, U.S.C.A. § 1182(d) (5) and (6). Since that permission to be and remain here was granted to this citizen of Cuba because he was such a refugee, it is reasonable to assume, in absence of a federal announcement to the contrary, that the right thus accorded the Cuban refugee to enter the United States will be continued for the duration of the same "indefinite period." Because of the uncertainty as to when, if ever, the contingencies necessary to end that period will occur in Cuba, it may be regarded as now unlimited. It could last for the lifetime of the refugee.
Subsequent to his arrival in Florida the refugee married here, and later he filed suit here for divorce. He has appealed from an order dismissing his complaint for want of jurisdiction on the ground that since he did not have authority under the immigration laws to remain here permanently he was incapable of acquiring a domicile in Florida, and therefore could not meet the 6 months residence requirement for divorce under § 65.02, Fla. Stat., F.S.A. "Residence," as used in the statute has been held to be domicile.[2]
A domicile of choice can be acquired on presence plus intent to make one's home permanently or for an indefinite period. Smith v. Croom, 7 Fla. 81, 150-160 (1857); Wade v. Wade, 93 Fla. 1004, 113 So. 374; Bloomfield v. City of St. Petersburg Beach, Fla. 1955, 82 So.2d 364; Gallagher v. Philadelphia Transp. Co., 3 Cir.1950, 185 F.2d 543; Hardin v. McAvoy, 5 *563 Cir.1954, 216 F.2d 399; Chaney v. Wilson-Benner, Inc., D.C.M.D.Pa. 1958, 165 F. Supp. 64; Heater v. Heater, D.C.Mun.App. 1959, 155 A.2d 523; Marcus v. Marcus, 194 Misc. 464, 90 N.Y.S.2d 830; In re Olson's Estate, 194 Wash. 219, 77 P.2d 781; Restatement, Conflict of Laws, § 21, comment (e), illustration 5; 17A Am.Jur., Domicil § 27; 28 C.J.S. Domicile § 11 b; Goodrich, Conflict of Laws § 28 (3 ed.); Leflar, Conflict of Laws § 10 p. 18 (1959); Stumberg, Conflict of Laws, 18 (1937); Note: Domicil of Refugees, 42 Col.L.Rev. 640 (1942). An alien who is a citizen of another country can acquire a domicile or "residence" sufficient to satisfy the jurisdictional requirement for divorce. Pawley v. Pawley, Fla. 1950, 46 So.2d 464, 471.
In two Florida cases cited above (Wade v. Wade and Bloomfield v. City of St. Petersburg Beach, supra) the court referred to the animus manendi as intention to remain permanently or for an "unlimited" time. In Hardin v. McAvoy and Gallagher v. Philadelphia Transp. Co., supra, it was held that too much emphasis should not be placed on the word "permanent," and that intent to remain for an indefinite period was sufficient. In this connection, in Hardin v. McAvoy, supra, the United States Court of Appeals in the fifth circuit, speaking through Chief Judge Hutcheson, said:
"Since the district judge gave no reason for deciding the case against plaintiff, we cannot say whether he was misled, by the statement that an essential requisite to the acquisition of a domicile is an abiding intention to make the place of residence home, into thinking that the possibility of eventually living elsewhere, or even of returning whence one came, would prevent the acquisition. It is quite possible, though, in view of the lack of precision sometimes attending the statement of the controlling principle, that the district judge may have fallen into the error in this case into which the district judge fell in Gallagher v. Philadelphia Transp. Company, note 3, supra. This error was attaching an incorrect significance to the word `permanent' sometimes used in discussing the animus manendi requisite in acquiring a new domicile, with the result of incorrectly concluding, from plaintiff's testimony, that he anticipated moving to Washington, Georgia to go back and farm as soon as he had made enough money in Florida, that, as matter of law, plaintiff's residence in Florida was not joined with the requisite animus manendi."
And in Gallagher v. Philadelphia Transp. Co., supra, the court said:
"* * * It is enough to intend to make the new state one's home. Restatement, Conflict of Laws (1934) §§ 19, 20; Chicago & Northwestern Ry. Co. v. Ohle, 1885, 117 U.S. 123, 6 S.Ct. 632, 29 L.Ed. 837. It is not important if there is within contemplation a vague possibility of eventually going elsewhere, or even of returning whence one came. Goodrich, Handbook of the Conflict of Laws (3rd ed. 1949) § 28; see Gilbert v. David, supra, 235 U.S. at page 569, 35 S.Ct. at page 166. If the new state is to be one's home for an indefinite period of time, he has acquired a new domicile. Mid-Continent Pipe Line Co. v. Whiteley, 10 Cir., 1940, 116 F.2d 871."
In a treatise, 1 Beale, Conflict of Laws § 21.1 (1955), the author discussed the precise question of whether a new domicile may be acquired by a refugee who plans to return to his own country when the political situation which prompted his leaving is removed, and the author's conclusion was that the refugee was entitled to acquire or make a new home under those circumstances, saying:
"Domicil, of course, cannot be changed by a forced exile, or by a change made necessary in order to secure safety in time of war, as in the case of the emigration of the nobles from France at the time of the French *564 Revolution (De Bonneval v. De Bonneval, 1 Curteis Ecc. 856 (1838). But where one leaves his country because of his dislike for its political condition, hoping to return when he can do so as a free citizen, but without immediate expectation of such an event, these facts are compatible with the acquisition of a domicil in the country to which he goes (Ennis v. Smith, 14 How. 400 [55 U.S. 398, 14 L.ed. 473])."
Also in Dicey, Conflict of Laws, Rule 9.2 (7th ed.), it was stated that one having the proper animus manendi may acquire a domicile in a country other than that of which he is a citizen even when his permission to remain is for a limited period which may or may not be renewed upon its expiration. The language of the writer in that instance was:
"A person who resides in the country from which he is liable to be deported may lack the animus manendi because his residence is precarious. But if in fact he forms the necessary intention, he acquires a domicile of choice. This applies both where he is given permission to reside for a limited period but is liable to deportation and also where he is given permission to reside for a limited period which can be extended at the discretion of the authorities of the country in question. Once such a person has acquired such a domicile choice he does not lose it merely because a deportation order has been made against him; he only loses it when he is actually deported. * * *"
The instant case is distinguishable from Juarrero v. McNayr, Fla. 1963, 157 So.2d 79, where it was held recently that such a Cuban refugee was not entitled to exemption of homestead from taxation, as provided for in Article X, § 7, Fla. Const., 26A F.S.A. That case turned on the feature that the constitutional provision for the homestead exemption required the applicant to have a permanent home, and the court quite correctly held that a Cuban refugee, here for an indefinite period, but not on a permanent visa, could not be said to have a permanent home here.
However, in administering the laws of the State of Florida with reference to divorce, courts should advert to the principle that the state is a party in interest in all divorce suits and that the public welfare and morals necessarily are involved. The unhealthy impact on the morals of the many persons involved and on the public welfare, which would result from holding that Cuban refugees who wish to consider Florida their home during the years in which they are permitted to remain here can not be treated as residents for the purpose of seeking necessary divorces, is too apparent to deserve detailed comment.
Accordingly, the judgment appealed from is reversed and the cause is remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
NOTES
[1] On the final hearing the plaintiff did not testify as to residence or his animus manendi, as the cause was dismissed at the outset, when his refugee status was disclosed.
[2] Wade v. Wade, 93 Fla. 1004, 113 So. 374; Chisholm v. Chisholm, 98 Fla. 1196, 125 So. 694.