**JAMES CHESNUT v. NORMA H. CHESNUT**

33 So. (2nd) 730                                    January Term, 1948
January 23, 1948                                   Special Division B
Rehearing denied February 23, 1948

*J. Harry Schad* and *Zach H. Douglas,* for appellant.

*J. C. Adkins, J. C. Adkins, Jr.,* and *Clayton, Arnow & Duncan,* for appellee.

TERRELL, J.:

Appellant and appellee were married in July 1943. The blare of the wedding bells generated frictions which blossomed into separation within a score of months. In July 1946, appellee filed suit for separate maintenance. Appellant countered with an answer and a cross bill, wherein he prayed for divorce on the ground of extreme cruelty. On final hearing appellant's prayer for divorce was denied but appellee's prayer for separate maintenance was answered with an award of $85.00 per month. This appeal is from the final decree.

The question with which we are confronted, is whether or not the record justifies the refusal of appellant's divorce and the award of appellee's alimony.

Both the parties were of good character and repute, but neither had previously pledged banns at the alter of Eros. The appellant had attained Man's Biblical allotment—three score years and ten (Ps. 90-10). The appellee was two score years and six. Both were "set" like concrete in their social attitudes which criss-crossed so that she was a pain to him

and he was a bore to her. The strain was so acute that he became seriously ill, she contracted a bad case of nerves and the presence of the one got to be mental torture to the other. The big trouble was total incapacity on the part of either for domestication. Seventy-five per cent of successful marriage depends on tact to cushion and bypass domestic frictions. It is much better than meeting them head on and bearing the scars they leave. When the bride and the groom are both devoid of a yen for domestication the marital bark puts out to sea with its jib pointed to the rocks.

In the bill and answer the parties charge each other with various and sundry derelictions but we find little in the record to support them but their own testimony. It is not disputed that he is a man of modest means, and that she has held a responsible job and supported herself for many years. In personal leanings, the one was the antithesis of the other. He loved a dram and she could not tolerate liquor on the place. He was something of a society-man while she preferred the company of her family and friends and visited with them when he went wheeling to satisfy his social urge. She apparently preferred her job to being his helpmate as she held to it despite the connubial experiment. He says she did not return home for the midday meal and often did not prepare the evening meal. She says he was given to frequent outbursts of temper and paid court to another woman, seventy-five years old, who was a tenant in one of his apartments. Must have been flat philandering but despite this and other strains, the case was one in which two-way pecadillos created a species of marital frustration that reacts to no present known social prophylactic.

The chancellor thought the trouble was incompatibility but we think the record reveals a complete allergy to the give and take essential to successful marriage. A man that is tactless enough to hang around the house and stimulate a domestic spat when he might take refuge in the office, the shop, the field or the grove, is minus what it takes to steer the home on an even keel. Likewise, the wife who is tactless enough to prefer the company of others to that of her husband, and gets more joy from her job than she does from the whoop of children,

the romance of sewing on buttons and darning socks, is minus what it takes to make the home aglow with domestic felicity. Such in essence is what the chancellor was confronted with and we see no basis on which the parties could compose their differences. It is therefore our view that appellant should have been granted a divorce. The mere fact of being tied together under such pressure will fray the nerves and undermine the health. We think the chancellor properly imposed the cost of the litigation on appellant, but we do not find support for the amount awarded for alimony. Neither of the parties showed the least susceptibility to domestication. Her position had not ben materially changed, she has the same job she had before, she is earning more, there were no children and the union produced nothing that might have been reasonably expected from it. Alimony is not a thing to be picked up like the manna that was miraculously supplied in the wilderness. It is awarded on the theory that marriage is a partnership to which the wife has contributed and when she withdraws from it she is entitled to reimbursement that she may not become a public charge.

We accordingly find no objection to that part of the final decree imposing the cost of the litigation and attorneys fees for appellee on the appellant, but think the amount awarded for alimony was excessive. While we think appellee was entitled to a modest award, we think it should be in the nature of a lump sum or a property settlement. If the parties can make such a settlement amicably, it should be approved by the chancellor, but if they fail to do so, the court should make it for them. Chapter 23894, Acts of 7947, contemplates that this may be done.

The judgment is accordingly reversed with directions to grant the appellant a divorce, require him to pay the cost of this litigation, including attorneys fees for appellee, and for an award of alimony in line with the views herein expressed.

Affirmed in part, reversed in part.

THOMAS, C. J., ADAMS and BARNS, JJ., concur.