111 So.2d 299 (1959)
Viola Retta Wilson KIRBY, Appellant,
v.
Marion Arthur KIRBY, Appellee.
No. A-367.
District Court of Appeal of Florida. First District.
March 12, 1959.
Rehearing Denied April 23, 1959.
Smith & Axtell, Jacksonville, for appellant.
Boyd & Jenerette, Jacksonville, for appellee.
CARROLL, DONALD, Judge.
This is an appeal from a final decree of divorce and an order denying a petition to rehear the decree, both entered by the Circuit Court for Duval County, Florida.
The appellant, plaintiff below, filed her complaint for divorce against the appellee-defendant *300 in the circuit court, containing the usual allegations as to residence, age, and marriage, and further setting forth that two children were born as issue of the marriage; that, while the plaintiff conducted herself as a true, loyal, and affectionate wife, the two parties had separated about two weeks previously; that, while they were living together in England during defendant's assignment to an air force base, he informed the plaintiff that he was in love with another woman and did not desire longer to continue their marriage; that the defendant continued his associations with other women. She alleged other grievances, charging the defendant with extreme cruelty. She alleged in her complaint that she did not have sufficient means with which to care for herself and the children and that the defendant was well able to supply her needs and those of the children; that she was supplementing her income by working as a school teacher but still had insufficient funds. In her complaint she prayed for temporary and permanent alimony, attorney's fees, and support money, temporary and permanent; for the custody of the children; and for a divorce a vinculo matrimonii.
The circuit court referred the cause to a special master "to take the testimony of the parties and report the same together with his findings of fact and law as to the faculties of the parties". By agreement only the faculties of the parties were considered by the special master. The special master made his findings, including a finding that the appellant was earning a gross salary as a school teacher of $3,500 a year, or $2,755 after deductions, and that the appellee's base pay was $183.30 a month, in addition to an allotment for the two children of $77.10 a month, and recommended that the appellee pay $127.10 per month for the care and support of the minor children and that the plaintiff's claim for permanent alimony be denied. The appellant filed exceptions to the special master's report. After a hearing on the report, the exceptions thereto, and the record, the circuit court entered a final decree, which is the subject of this appeal, holding that the equities of the cause were with the plaintiff-appellant and against the defendant-appellee and that the plaintiff was entitled to a decree in accordance with the prayer of her complaint; granting a divorce a vinculo matrimonii; awarding the custody of the two minor children to the plaintiff, subject to the right of the defendant to visit with the children at reasonable times at the plaintiff's residence in Jacksonville and at such other places as the plaintiff should approve; and directing the defendant to pay to the plaintiff for the support of the minor children the sum of $127.10 per month, of which sum $77.10 would, by virtue of army allotment, be paid directly to the plaintiff, with the remainder of the sum, amounting to $50 per month, to be paid by the defendant through the office of the Clerk of the Circuit Court for Duval County. The final decree further stated:
"The Plaintiff's claim to alimony is, hereby, denied. The evidence on the faculties herein shows no need of the plaintiff for alimony."
In the decree the court also directed the defendant to pay a certain amount to the plaintiff's attorney for attorney's fees, and to pay to the plaintiff the costs of the action. In the final paragraph of the decree the circuit court said:
"This Court hereby reserved jurisdiction of this cause for the following several purposes: (a) To enforce this Decree; (b) for the purpose of increasing or decreasing the amounts of support money as shall be required by law at any time in the future; (c) of the custody of the said minor children, Joseph Arthur Kirby and James Ward Kirby."
The final decree contained no reservation of jurisdiction with respect to alimony to the plaintiff.
In her petition for rehearing the plaintiff complained that the decree punished *301 the plaintiff and made it necessary for her in the future to live on less than she had prior to the decree, and financially favored her offending husband, notwithstanding all fault for the separation was his and was of a reprehensible, if not of an execrable, character, and further said that "notwithstanding the law is that, in a situation such as that existing in this case, the husband should remain liable for the support of his wife, the decree erroneously would result in making his wife a public charge, should her power to earn her living be destroyed and also would jeopardize the proper rearing of the children of the parties". After argument by counsel the circuit court entered an order denying the petition for rehearing, which order is also appealed from herein.
The main argument of the appellant on this appeal seems to be that the circuit judge committed error in failing to provide in his final decree that the court reserved jurisdiction of the matter of alimony to the appellant.
In support of her contention on this point the appellant in her brief cites authorities for the proposition that alimony cannot be awarded after entry of a divorce decree where alimony or a provision for alimony has been omitted in the final decree. Among the cases cited is Frohock v. Frohock, 117 Fla. 603, 158 So. 106, 107, in which the Florida Supreme Court held:
"The general rule, subject to some exception, is that alimony, temporary or permanent, cannot be allowed after final decree, since the suit is no longer pending and the court has no jurisdiction of the parties. See 19 C.J. 210; Erkenbrach v. Erkenbrach, 96 N.Y. 456; 2 Nelson on Divorce and Separation, § 936; 1 R.C.L. 937.
* * * * * *
"The decree did not expressly reserve the question of alimony for further consideration or for further order or decree nor does any statute of this state empower the court to make any order concerning alimony after the final decree. The statute provides merely that in a suit for divorce, if the wife shall in her answer or by petition claim alimony or suit money, and the answer or petition shall seem well founded, the court shall allow a reasonable sum therefor, and in every decree of divorce in a suit by a wife the court shall make such orders touching the maintenance, alimony, and suit money of the wife or any allowance to be made to her as from the circumstances of the parties and the nature of the case may be fit. See sections 4986, 4987, C.G.L. 1927."
She also quotes in her brief from Carson, "Florida Law of Family, Marriage and Divorce", 1950 Edition, page 667, Section 9, as follows, on the subject of when permanent alimony will be granted:
"It cannot be granted after a decree of divorce is entered. If it is not asked for before the decree, it is deemed to have been waived. It would seem advisable that the decree reserve the right to the wife to apply for alimony as the situation may subsequently present itself, so that the decree may later be modified. No Florida statute permits the modification of a decree where alimony or provision for alimony has been omitted in the final decree. Where suit rests on constructive service upon the husband, and where his property is outside the state, it has been held that the wife may subsequently apply when personal service can be had on him or when his property is located in the state. Of course, the decree may reserve the right to apply for alimony when changed conditions occur  for example, the husband's future ability to pay."
Each of the parties to this appeal makes a persuasive "ad hominem" argument on the question whether the circuit court should have reserved jurisdiction to entertain *302 future applications by the former wife for an award of alimony.
The appellant points out that in this final decree the court held that the equities were with her and granted her a divorce, but denied her claim to alimony because the evidence on the faculties showed no present need on her part for alimony. The appellant asks: should not the court in all equity and fairness reserve jurisdiction to entertain the former wife's application for alimony if in the future her need and the financial condition of the appellee should change? Supposing, says the appellant, that she should in the future become so sick and disabled that she may be completely unable to work or move and supposing that the appellee should come into great wealth. If such a change of circumstances should eventuate, is it right that she should forever be barred from receiving alimony from the appellee? Is it right, she asks, that she should become a public charge while her former husband, whose conduct caused the divorce, goes free to enjoy his wealth?
On the other hand, the appellee claims that it would be unfair to "hound" him the rest of his life with the cloud perpetually hanging over his head of the possibility that his former wife might at any time apply for alimony from him?
We are very much impressed with the equity in the appellant's position and are constrained to think that, if we had been sitting as the chancellor in this case below, we would have reserved jurisdiction in the final decree so that we could entertain jurisdiction of the appellant's application for alimony if in the future the circumstances of the parties should so change as to show a great need of the appellant for alimony and an increased financial ability on the part of the appellee to pay alimony. This does not, of course, mean that alimony should be awarded upon a change of circumstances, but it does seem fair and right in a case like this to reserve jurisdiction so that the court would have the power to entertain a future application by the wife for alimony. That is the way we think we would have exercised our discretion, but that does not necessarily mean that the circuit court in this case abused its discretion in not so reserving jurisdiction. It is basic that in an appeal of this kind, where the ruling complained of was within the discretion of the lower court, we cannot reverse the final decree unless we hold that the court abused its discretion. We do not believe this to be an abuse of discretion, and so we must sustain the final decree appealed from as to the matter of its failure to reserve jurisdiction to entertain an application by the appellant for alimony.
In another assignment of error the appellant says that the circuit court erred in the amount of support money to be paid by the appellee to the appellant in that such amount was fixed at a sum less than the reasonable needs of the children of the parties and less than the appellee is able to pay for such support. In the final decree the court directed the appellee to pay to the appellant the sum of $127.10 per month for the support of the parties' two minor children, $77.10 of which sum was by virtue of army allotment to be paid directly to the appellant and the remainder of said sum, amounting to $50 a month, was to be paid by the appellee through the Domestic Relations Depository in the office of the Clerk of the Circuit Court for Duval County. The evidence showed that the appellee, a sergeant in the military service, received a gross income before deductions of $183.30 a month, not counting the army allotment for two dependents of $77.10 a month. We cannot say that in making the award for support of the minor children in the final decree the circuit court abused its discretion, and so that part of the final decree should be affirmed. It should be mentioned here that in the eighth paragraph of the final decree the court reserved jurisdiction of the cause for the purpose of increasing or decreasing the amounts of support money as should *303 be required by law any time in the future, and so the circuit court will be in a position to entertain an application in the future to increase or decrease the amount awarded for the support of the children in the final decree.
Our conclusion is, therefore, that the final decree and the order appealed from should be, and they are, affirmed.
Affirmed.
STURGIS, C.J., and WIGGINTON, J., concur.

On Petition for Rehearing
PER CURIAM.
The petition for rehearing is denied.
WIGGINTON and CARROLL, DONALD, JJ., concur.
STURGIS, Chief Justice (dissenting).
Appellant's petition for rehearing cogently suggests that by our decision herein we have departed from controlling prior decisions of our Supreme Court on the subject of alimony and that our conclusions are unsound both under the statute (F.S. § 65.08, F.S.A.) and from the standpoint of public policy. I am persuaded that her position is correct and that we are grievously in error to deny rehearing.
The material facts on the issue of divorce proper are substantially set out in our former opinion. It is well to add, however, that the testimony for the wife on the issue of her right to divorce stands unchallenged in every particular. Further, that although this was an adversary proceeding in which the husband was represented by counsel and testified vigorously for himself on the issue of the amount he should contribute for the support of his minor children, custody of whom was given to the wife, and on the issue of the right to and amount of alimony he should pay to his wife, he presented no testimony on the issue of divorce and there are no offsetting equities favoring him in that behalf.
We are not dealing with parties that are financially independent or have high incomes. The husband is a non-commissioned officer in military service and the wife is a school teacher.
It is seen that the issue on the right to divorce was necessarily resolved in favor of the wife. Testimony on that issue was presented before the Chancellor. Pursuant to reference, testimony upon the question of support money for the children and alimony for the wife was presented before a Master who made findings of fact and recommendations which were approved and put into effect by the final decree. The testimony on the issues before the Master reflects that the total income of the husband and wife was necessarily employable for the support of themselves and their children. The Master's recommendations for and the final decree fixing the contribution to be made by the husband toward the support of the children had the effect of equalizing, with reasonable practicality dollar-wise, the post-divorce position of the parties. There was, therefore, no abuse of discretion, under the circumstances existing at the time of the entry of the final decree, in the refusal of the trial court then and there to make an award of and require payment immediately of alimony to the wife.
There is a clear distinction, however, between the question as to whether there exists a fundamental right to alimony and the collateral question (1) as to the amount, kind and character thereof, and (2) whether, when, and by what method the party entitled shall enjoy the fruits of the right. The distinction is important and should have controlled our disposition of the appeal. I confess that until consideration of the petition for rehearing it escaped my deliberations.
It is the common practice of courts of chancery to defer action on the collateral *304 questions, but such deferment does not affect, much less extinguish the right to alimony once it is established. The key, then, to the case on appeal depends on the answer to this question: Was the Chancellor entitled, under the facts presented on the issue of divorce, to permanently deny alimony? This question is separate and apart from the question of whether other facts support his refusal to provide immediately for the enjoyment thereof.
There is no exception to the general rule that where the husband causes the separation he should remain liable for his wife's support. Montgomery v. Montgomery, Fla., 1951, 52 So.2d 276. In the case on review there is not only an overwhelming variety of equities establishing that the husband caused the separation and that the wife was entitled to divorce, but a complete vacuum of any equity favoring the husband to the slightest degree in that behalf. Hence he should "remain liable" for her support even though he is presently unable or for some other equitable consideration should not be required to forthwith do anything about it. It is the complete absence of facts in this case by which to support the Chancellor's denial of the right to alimony that destroys the concept of discretion so to act and make the denial an error of law. The record before the Chancellor permits no conclusion other than that it was the fault and guilt of the husband which produced the divorce. It therefore left no opportunity for the exercise of discretion on the subject of the wife's right to alimony. The final decree should have adjudicated that right as a matter of law, and it should have contained an appropriate finding, as it clearly implicates, to the effect that the relative need of the wife and ability of the husband to pay were such that no award of alimony would be made for the present. Procedurally, the final decree should have retained jurisdiction of the cause for the purpose of making an award of alimony as in equity might be proper upon a future showing.
The error of the Chancellor in denying alimony, and what I conceive to be our error under our former decision in affirming that denial, as well as in denying rehearing, is manifest under the authority of Montgomery v. Montgomery, supra, in which our Supreme Court reversed the Chancellor on the premise that the discretion in respect to the granting of alimony is not unlimited but must be exercised "in keeping with established principles of law." There, as in the case on appeal, alimony had been denied notwithstanding a record indicating that the husband was entirely at fault and the divorce was granted to the wife. The parties to that cause were young, had been married only several years, each was gainfully employed when they married, and no estate of consequence had been created by their joint efforts. Rejecting the Chancellor's observation that the wife was still young and attractive and well able to care for herself and that it was contrary to equity and good conscience to require the husband to support her indefinitely, the Supreme Court said that such factors were insufficient to warrant denial of alimony.
Failure to recede from our former decision permits it to stand nakedly for the proposition that the Chancellor may, for any or no reason, deny alimony, and for the further proposition that the right to alimony is forever forfeited if by happenstance the wife, at the time of the final hearing on the issue of divorce, is in such financial circumstances as compared to those of her husband as to make it inequitable to immediately require the husband to contribute toward her support, even though at that time the independent resources of each may be sufficient to satisfy the normal creature comforts. It stands also for the proposition that the right to alimony is forever forfeited if by happenstance the wife, at the time of the final hearing on the issue of divorce, has such resources or income as compared to those of the husband that it would be inequitable to require him to immediately commence payments of alimony. That sort of doctrine would resolve the right to alimony exclusively on the basis of the $-mark and would ignore the equities. Such *305 is not only counter to every principle of equity and good conscience, but is not now, never has been, and never should be the law. See Chesnut v. Chesnut, 160 Fla. 83, 33 So.2d 730; Kube v. Kube, 159 Fla. 895, 32 So.2d 921; Brunner v. Brunner, 159 Fla. 762, 32 So.2d 736; Knox v. Knox, 159 Fla. 123, 31 So.2d 159; Borden v. Borden, 156 Fla. 770, 23 So.2d 529; Randolph v. Randolph, 146 Fla. 491, 1 So.2d 480.
My view does not do violence to the well-established rule that a final decree denying the wife's prayer for alimony, from which no appeal is taken, cannot be reopened for the purpose of imposing alimony, notwithstanding a change in the condition of the parties. That rule rests on the principles of res judicata. Nor do my views do violence to the proposition that alimony may not be granted unless the pleadings of the wife seek it and there is personal service of process on the husband. We have here a timely appeal and appropriate assignment of error in a case where alimony was sought and denied, and where there is jurisdiction over the person of the husband. We must, therefore, decide whether as a matter of law the Chancellor exercised a sound discretion in denying alimony.
Surely it would be a travesty on logic and justice to hold that the Chancellor, by the device of a finding that there exists no equity requiring the immediate payment of alimony and coupling that finding with a decree that does not affirmatively retain jurisdiction for the purpose of awarding alimony at a later date as the equities might require, can obliterate entirely the right to alimony where it is unequivocally established by the proofs.
Where the right to alimony exists it is procedurally correct, of course, and it is doubtless the better practice, to specifically provide in the final decree for retention of jurisdiction either to modify or initially make an award of alimony, as the circumstances may require. However, where the right is established by the decree, words of art in the decree retaining jurisdiction for such purpose are not essential to the inherent jurisdiction of a court of chancery to enter supplemental orders touching upon alimony.
I am not unmindful of the fact that a recalcitrant grass widow might attempt to use the processes of the court as a means to harass, hound and embarrass her former spouse. There are many practical reasons, however, why in the absence of justifiable facts she would find it an expensive and unrewarding pastime, not the least of which are the good offices of the Chancellor that must be relied upon to protect the male of the species from the spiteful assaults of a former wife.
I therefore respectfully dissent from the action denying the petition for rehearing. I would grant it, recede from the conclusions expressed in our former decision, and direct the Chancellor to enter a supplemental decree in accordance with the views I have expressed.