322 So.2d 53 (1975)
Glen A. CARROLL, Appellant,
v.
Vernell CARROLL, Appellee.
No. Y-109.
District Court of Appeal of Florida, First District.
October 31, 1975.
Rehearing Denied December 2, 1975.
W. Paul Thompson, DeFuniak Springs, for appellant.
William Howard LaPort, Crestview, for appellee.
SMITH, Judge.
Mr. Carroll appeals from an interlocutory order sustaining his wife's choice of Okaloosa County as the forum for her petition for dissolution of their marriage. Appellant complains that the marriage was made in Alabama and was lived out in Holmes County where, therefore, it must have been irretrievably broken. He insists that the cause of action for dissolution did not arise in Okaloosa County, and that the proceeding is not maintainable there. Sec. 47.011, F.S. 1973.
On the strength of Ms. Carroll's affidavit, the trial judge held that the cause of action arose in Okaloosa and that venue was properly laid in that county. *54 He therefore denied appellant's "plea of privilege," which was properly treated as a motion to dismiss for improper venue or to transfer. Rule 1.140, R.C.P.; Inverness Coca-Cola Bottling Co. v. McDaniel, 78 So.2d 100 (Fla. 1955). Ms. Carroll's affidavit recites that she left the unhappy marital home in Holmes County, returned to her native Okaloosa three months before filing her petition and:
"Our marriage became irretrievably broken after I returned to Crestview, Okaloosa County, Florida. I left Holmes County on the 24th day of July, 1974, which was a Wednesday. On the 28th day of July, 1974, a Sunday, my husband, Glen A. Carroll came to my house in Crestview, Okaloosa County, Florida and demanded the keys to our Plymouth Fury automobile. I was afraid to refuse and gave him the keys. He was very angry and upset and took the automobile leaving me and my child without transportation. I then knew the marriage was completely broken and there was no way to get back together. I decided to get a divorce."
Since 1829 plaintiffs have been privileged to avoid litigating in the home county of a resident defendant by filing in the county where the cause of action accrued. As amended, § 47.011, F.S. 1973.[1] Before 1971, when the legislature enacted laws for dissolution of marriages irrespective of fault (Ch. 71-241, Fla.Laws 1971; Ch. 61, F.S. 1973), the venue question was typically whether a wife who had moved to the county of the forum, leaving both estranged husband and marital home elsewhere in Florida, could there maintain the divorce action over her husband's objection. Despite judicial intimations that a wife might carry venue with her elsewhere when "of necessity" she left the marital home to escape the cruelty constituting her grounds for divorce,[2] a closely divided Supreme Court held in 1951 that the plaintiff wife's cause of action arose in the county where the asserted cruelty occurred, not in the county into which she was thereby driven. Copeland v. Copeland, 53 So.2d 637 (Fla. 1951).
Yet it did not follow from Copeland that a spouse seeking refuge or new surroundings was invariably required to litigate in the inhospitable territory where the marriage was suffered and the other party remained. It was held in Bannerman v. Bannerman, 204 So.2d 234 (Fla.App. 3rd, 1967), cert. dism. 210 So.2d 220 (Fla. 1968) that a woman who left marital home and husband in Leon County could file for divorce in Dade because at least some of the acts of extreme cruelty, asserted as grounds for divorce, occurred in Dade. The divided District Court of Appeal held that the trial court was not required to compare the acts of cruelty done in Dade with "the more substantial" acts which occurred earlier in Leon.
Although the facts in the Bannerman divorce case might have justified minimizing that decision as precedent in a dissolution proceeding,[3] the District Court of Appeal, *55 Second District, carried the Bannerman principle root and branch into marriage dissolution proceedings when deciding Arnold v. Arnold, 273 So.2d 405 (Fla.App. 2nd, 1973). That decision of first impression was that the petitioning spouse may select a forum other than that of the marital home and the respondent's residence if the events which finally and irretrievably broke the marriage took place in the county of the forum. Thus the court in Arnold sustained venue in Hillsborough County, notwithstanding that both the husband and the marital residence were in Polk, because Mr. Arnold followed his departing wife to Hillsborough and there "caused her undue embarrassment and threatened to do it again." The court stated that it was in Hillsborough, "after these visits," that the wife filed her petition. The implication plainly is that the last straw was laid on the marital back in Hillsborough, that Ms. Arnold there perceived the marriage was irretrievably broken and, consequently, that the cause of action arose there and not in Polk.
The Arnold decision supports Ms. Carroll's choice of Okaloosa County as the forum. Ms. Carroll stated on oath that she knew her marriage was finally and irretrievably broken there on July 28, 1974, when her husband came to Crestview and took away the car in a display of anger and, as it turned out, reckless prelitigation venue tactics. Appellant argues that the Fury incident was inconsequential and that giving effect to Ms. Carroll's "last straw" recital will invite charades in which, for venue purposes, each spouse attributes the breach to an event which happens to have occurred in the county of his or her choice. If Ms. Carroll may declare that Okaloosa is the forum because she perceives the marriage as broken there when she lost her Fury on July 28, why may not Mr. Carroll trump her play by announcing that the marriage was previously broken in Holmes County, where he lost his wife on July 24?
One of the admirable goals of the 1971 marriage dissolution legislation was eliminating, as far as can be, the systematic frauds and near-frauds that unhappy litigants, their counsel and the courts imposed on one another, under aegis of law, in finding fault as a prerequisite to relief. Jackson, "The No-Fault Concept, Grounds and Defenses," Florida Family Law § 21.6 (2nd ed., The Florida Bar, 1972). Fault concepts poorly served human needs in marriage and divorce, and it sometimes seemed more decent to minimize or ignore those concepts  see Mr. Justice Terrell's opinion in Chesnut v. Chesnut, 160 Fla. 83, 33 So.2d 730 (1948)  than to wrench them to fit the case. The debasing strategies that often accompanied fault-based divorce litigation[4] taught us to beware rules of law *56 whose substantial advantages are too easily invoked by casual perjury. We would therefore not gladly embrace a venue rule that encourages a spouse seeking a dissolution of marriage to plant a foot in the county of choice, take a stance and declare, This is the place  not there, nor there, but here  where I knew my marriage was irretrievably broken.
This is not to say that Ms. Carroll's cognition of the marriage breach was inconsequential. On the contrary, courts know what every marriage partner knows or intuits: that, just as marriage is both a physical arrangement and a working commitment of spirit, so an irretrievable break is not simply a final disruptive event piled upon others but also one's recognition of hopeless alienation. It was therefore altogether meaningful for Ms. Arnold to say that she perceived, after her husband's forays into Hillsborough County, that her marriage was broken, and for Ms. Carroll here to say, "I then knew [after July 28] the marriage was completely broken and there was no way to get back together." But the question is not whether the law will admit the reality of that perception. The question rather is whether the law will give that subjective event conclusive effect in locating venue.
We conceive that to give determinative effect to Ms. Carroll's stated perception of the broken marriage would invert the purposes of venue statutes which historically have preferred the convenience of resident defendants and have granted only limited choices to plaintiffs. As long as the legislature considers that there is a need to protect Holmes County residents from the real or imagined hazards of litigation instituted at an adversary's whim or convenience in Okaloosa, Duval or Dade, we cannot sustain the petitioner's choice of a distant forum, in a county other than that of the respondent spouse and the marital home, on grounds that the petitioner there decided that the marriage was hopelessly broken. The opportunity to abuse such a rule is too great; and, given the wide discretion and range of choices available to the trial judge in determining issues of rehabilitative and permanent alimony, the rewards for successful forum-shopping are too tempting.
But, Ms. Carroll will insist, the cause of action arose in Okaloosa County not only because she there perceived the irretrievable breach but also because that was the place where her husband offered a final insult by coming in anger for the Fury. It was the coalescence of both events in Okaloosa, she argues, that gave rise to the cause of action. We regard Mr. Carroll's momentary presence in Okaloosa County, on July 28, 1974, as having no significance in the resolution of the venue question. Ms. Carroll's decision to seek dissolution might as well have resulted from an insulting letter or a telephone call received in Crestview, and her husband might have been anywhere when he wrote the letter or placed the call. Ms. Carroll's decision might also have arisen in the fullness of time from mere separation, from some other cause, or from no identifiable cause. Indeed, Mrs. Carroll might as truly have perceived the marriage as broken had her husband come to Okaloosa County with a desperate request for reconciliation. It would surely be offensive to the purposes of the marriage dissolution laws[5] to penalize Mr. Carroll for reconciliation efforts by subjecting him, on that account, to suit in Okaloosa. That Mr. Carroll evidently came to Okaloosa to retrieve the Fury rather than to restore the marriage cannot be made the critical factor in proceedings for judicial recognition that, despite good faith all round and irrespective of fault, the marriage is broken.
*57 To protect the beneficial purposes of both the marriage dissolution legislation and the venue statute, we are required to look, not for the county or the scattered counties where the breach may be said to have occurred, but to the single county where the marriage last existed. In that county the intact marriage was last evidenced by a continuing union of partners who intended to remain and to remain married, indefinitely if not permanently. Ordinarily the court will recognize that county naturally, as do the parties themselves, and the venue problem will be no more difficult than finding where the marriage partners called home. Courts have long asked that simple question when determining the domicile of succession. Smith v. Croom, 7 Fla. 81, 97-101, 154-59 (1857), reh. den. 7 Fla. 180. The harder cases inevitably arising in this day of atomic families and separate residences [Judd v. Schooley, 158 So.2d 514 (Fla. 1963)] will respond to a test like that employed to resolve domiciliary controversies in other contexts. See Wade v. Wade, 93 Fla. 1004, 113 So. 374 (1927), invoking the Roman doctrine, and Perez v. Perez, 164 So.2d 561 (Fla.App. 3rd, 1964). In what county were both partners last present with a common intention to remain married and in that place? There the marriage was broken, although recognition of the breach was postponed; there the cause of action for dissolution arose, within the meaning and application of § 47.011. We respectfully disagree with the decision to the contrary by the District Court of Appeal, Second District, in Arnold v. Arnold, 273 So.2d 405 (Fla.App. 2nd, 1973).
We recognize that our decision places more severe venue restrictions on the petitioning spouse whose marriage and partner are in Florida than on the comparatively new resident who left spouse and marital home in another state. Taken together, §§ 47.011, 61.021 and 61.061, F.S., permit a resident of six months to file against a nonresident spouse in any county he or she may choose. That is not an anomalous preference for the recently-arrived petitioner but rather an application of the legislature's time-honored interest in protecting the venue privileges of resident defendants and its refusal to recognize those of nonresidents. Sec. 47.011, F.S. 1973. The legislature is of course empowered to relax the effect of § 47.011 in dissolution proceedings, as indeed it has done in respect to applications for modification of alimony. Sec. 61.14(1), F.S. 1973.
We remand this case with directions that it be transferred within the First Judicial Circuit to Holmes County where, under § 47.011, F.S. 1973, it should have been filed.
Reversed.
BOYER, C.J., and MILLS, J., concur.
NOTES
[1] Ms. Carroll makes no attempt to invoke the additional provision of § 47.011 allowing an action to be maintained in the county "where the property in litigation is located." This provision is commonly understood to refer only to actions local in nature [e.g., Hendry Corp. v. State, 313 So.2d 453 (Fla.App. 2nd, 1975)], which a marriage dissolution proceeding is not. Evans v. Evans, 141 Fla. 860, 194 So. 215 (1940); McGowin v. McGowin, 122 Fla. 394, 165 So. 274 (1936), affd. 131 Fla. 247, 173 So. 927 (1937). It has been held, however, that the presence of a child in the forum county is sufficient to sustain venue of an action involving his custody and support, despite objection by a defendant residing in a distant county. Dones v. Green, 212 So.2d 919 (Fla.App. 3rd, 1968), citing York v. York, 78 So.2d 406 (Fla. 1955) (dictum).
[2] Russell v. Russell, 86 Fla. 15, 96 So. 288 (1923); Edmundson v. Edmundson, 133 Fla. 703, 709, 182 So. 824, 826 (1938).
[3] In Wildey v. Wildey, 30 Fla. Supp. 201 (Cir.Ct., Broward Co., 1968), the chancellor in a divorce suit filed in Broward refused to sustain venue there, where several of the acts of cruelty allegedly occurred but where neither spouse ever lived. Declining to apply Bannerman in those circumstances, the circuit judge ascertained from court files that Ms. Bannerman's first complaint for divorce, on grounds of cruelty inflicted in Leon County, was denied by a Leon circuit judge for want of a prima facie case, and that her second complaint, held properly filed in Dade, had been substantially strengthened by allegations of the subsequent cruelty inflicted in Dade.
[4] "People [in filing divorce complaints] usually allege only the barest of grounds where there is no real contest. If there actually are no facts which constitute grounds, cruelty is the easiest lie to tell. Even when there are other grounds, cruelty is usually alleged in order to spare everybody the embarrassment of a sordid story of adultery or the unhappy details of alcoholism. As a result the judge often knows nothing of what really caused the marriage to break up. One lawyer, David Levine, has observed, `The trial court is precluded from making its determination on the basis of the whole truth and must reluctantly honor the will of the parties like some official vending machine. The result is that the court's statement of facts, based as it is on minimal evidence, is often a restatement of the petitioner's version of the marital strife.'" Wheeler, No-Fault Divorce, Ch. 1 "Anything but the Truth," p. 7 (Beacon Press, Boston 1974).
[5] One of the stated purposes of the 1971 act is "[t]o promote the amicable settlement of disputes that have arisen between parties to a marriage." Sec. 61.001(2)(b), F.S. 1973. The Act specifically authorizes the court in certain circumstances to order the parties to seek professional assistance in reconciliation. Sec. 61.052(2)(b)1.